## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CARGO-LEVANT SCHIFFAHRTSGESELLSCHAFT MBH, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 12-1363-RGA-CJB |
| PSL LIMITED, | ) ) | |
| Defendant, | ) ) | |
| and | ) ) | |
| PSL USA, INC., and PSL NORTH AMERICA, LLC, | ) ) ) | |
| Garnishees. | ) | |

## MEMORANDUM ORDER

Pending before the Court in this case, one arising within the admiralty jurisdiction of the

federal courts, is a motion (the "Motion") by Plaintiff Cargo-Levant Schiffahrtsgesellschaft MbH

("Cargo-Levant") filed pursuant to Rule B of the Supplemental Rules for Admiralty or Maritime

Claims and Asset Forfeiture Actions ("Rule B") that are a part of the Federal Rules of Civil

Procedure. The Motion requests that the Court issue an order requiring Garnishees PSL USA,

Inc. ("PSL-USA") and PSL North America, LLC ("PSL-NA") to deposit certain monies into the

registry of the Court. (D.I. 20)[1] PSL-USA and PSL-NA (collectively, "Garnishees") oppose

---

[1]      The Court will treat Cargo-Levant's Motion as a non-dispositive motion, which may be resolved by the Court pursuant to 28 U.S.C. § 636(b)(1)(A) and D. Del. LR 72.1(a)(2). The Court does so because the Motion is not one of (nor is it directly analogous to) pre-trial matters listed in 28 U.S.C. § 636(b)(1)(A) and D. Del. LR 72.1(a)(3) that a United States Magistrate Judge must resolve through the issuance of a Report and Recommendation. *See* 28 U.S.C. § 636(b)(1)(A); D. Del. LR 72.1(a)(3). And though the guidance from case law is

Cargo-Levant's Motion.

For the reasons discussed below, the Court GRANTS-IN-PART and DENIES-IN-PART

Cargo-Levant's Motion, and ORDERS Garnishee PSL-NA to deposit $800,000 into the Court's

registry.

## I.   BACKGROUND

### A.   Facts Regarding the Parties

Cargo-Levant is a German company that is "engaged in the business of the carriage of

merchandise by sea for hire[,]" with its principal place of business in Bremen, Germany. (D.I. 1

at ¶ 2)  PSL Limited is an Indian company that manufactures rolled steel pipe for a variety of

industrial uses, with its principal place of business in Mumbai, India. (*Id.* at ¶ 3; D.I. 23 at 3-4)

PSL-USA and PSL-NA are both companies incorporated in Delaware. (D.I. 1 at ¶¶ 4-5)  PSL-

USA is a holding company that is wholly-owned by PSL Limited. (Affidavit of Mike Lockey

("Lockey Affidavit"), D.I. 23, ex. A at ¶ 2; D.I. 23 at 5)  PSL-USA's only asset is PSL-NA, and it

is a majority owner of PSL-NA. (Lockey Affidavit at ¶ 2; Sworn Declaration of K. Ramanathan

("Ramanathan Declaration"), D.I. 39, ex. 1 at ¶ 3)  Like PSL Limited, PSL-NA manufactures

rolled steel pipe for a variety of industrial uses. (D.I. 23 at 3-4; Lockey Affidavit at ¶¶ 2-3)  PSL-

NA, however, has its principal place of business in Hancock County, Mississippi. (Lockey

---

limited, it is notable that Magistrate Judges have not tended to issue a "Report and
Recommendation" when resolving a motion requesting that a party be required to deposit funds
into a court's registry. *See, e.g., Tisino v. Becerra*, Civil Action No. G-10-244, 2012 U.S. Dist.
LEXIS 124374, at *4-5 (S.D. Tex. Aug. 31, 2012) (Magistrate Judge addressing plaintiff's
request that defendant deposit funds into the registry of the court with an "Opinion and Order");
*Serio v. Black, Davis & Shue Agency, Inc.*, No. 05 Civ. 15(MHD), 2006 WL 156395, at *1
(S.D.N.Y. Jan. 12, 2006) (Magistrate Judge noting earlier "order" granting plaintiff's request for
defendant to deposit funds into the registry of the court).

Affidavit at ¶ 2)

## B.     Additional Factual Background and Procedural History

### 1.     Events Prior to the Filing of the Instant Suit

This case arises from an agreement between Cargo-Levant and PSL Limited, dated June

26, 2009. (D.I. 1 at ¶ 7) According to Cargo-Levant, pursuant to that agreement, PSL Limited

contracted with it for the carriage of steel pipes aboard the M/V SUNRISE from India to another

location; when a later dispute between Cargo-Levant and PSL Limited arose, the agreed-upon

shipment did not take place. (*Id.* at ¶¶ 7-8) Cargo-Levant thereafter commenced an arbitration in

London, England, asserting that it was due payment of monies pursuant to the agreement. (*Id.* at

¶¶ 9-10) An arbitration hearing was held in London on March 12, 2012, (*id.* at ¶ 11), and an

arbitrator issued a Final Arbitration Award on April 30, 2012—finding in favor of Cargo-Levant

and awarding it the principal sum of $421,031.90 plus certain interest and fees (collectively, the

"London Arbitration Award" or "the Award").[2]  (*Id.* at ¶ 12 & ex. B at 11-12)

### 2.     The Instant Suit, its Allegations, and the Motion at Issue

After Cargo-Levant did not receive payment from PSL Limited with regard to the London

Arbitration Award, it filed suit against PSL Limited in this Court on October 25, 2012. The

instant suit seeks aid of recognition and enforcement of the Award. (*Id.* at ¶¶ 1, 13) Cargo-

---

[2]     According to Cargo-Levant, interest on the amount awarded Cargo-Levant is to be
computed at the rate of 5.5%, compounded every three months from September 1, 2009 through
the date of payment. (D.I. 1 at ¶ 12 & ex. B at 11-12) Cargo-Levant is also owed its share of the
arbitrator's fees in the amount of $8,419.95, plus interest thereon at the rate of 5.5%,
compounded every three months from the date of payment by Cargo-Levant to the date of
reimbursement by PSL Limited. (*Id.*) Finally, Cargo-Levant is owed the costs it incurred in
connection with the arbitration, in an amount to be determined and approved by the arbitrator,
plus interest thereon at the rate of 5.5%, compounded every three months from April 30, 2012 to
the date of payment. (*Id.*)

Levant's Complaint, brought under this Court's admiralty and maritime jurisdiction, also named

PSL-USA and PSL-NA as Garnishees, based upon: (1) Cargo-Levant's understanding that PSL

Limited cannot be found within this District under the meaning of Rule B, and (2) Cargo-

Levant's belief that Garnishees have, within this District, certain "tangible or intangible goods,

chattels, credits, freights, effects, debts, obligations, assets and/or funds belonging to, owed to,

claimed by or being held for . . . PSL Limited" in their custody, possession or control. (*Id.* at ¶¶

14, 16)

   With its Complaint, Cargo-Levant sought an Order from this Court for the Issuance of

Process of Maritime Attachment and Garnishment, attaching any property of PSL Limited held

by Garnishees "for the purpose of obtaining personal jurisdiction over PSL Limited, and to

secure Cargo Levant's claims[.]" (*Id.* at ¶ 17) On October 26, 2012, Judge Richard G. Andrews

issued such an Order "in an amount up to and including $504,424.21, plus interest from August

30, 2012, and costs yet to be determined[.]" (D.I. 10 at 2) That same day, pursuant to Judge

Andrews' Order, this Court's Clerk issued a Process of Maritime Attachment and Garnishment,

directing the attachment of Garnishees' property held for the benefit of PSL Limited. (D.I. 12)

On January 9, 2013, Judge Andrews referred this case to the Court to hear and resolve all pre-

trial matters, up to and including the resolution of case-dispositive motions.

   Thereafter, on January 16, 2013, Cargo-Levant filed the instant Motion. (D.I. 20) In the

Motion, Cargo-Levant requested, pursuant to Rule B(3)(a), that the Court enter an Order

requiring Garnishees to deposit $750,000 into the Court's registry, in order to satisfy the amount

of its anticipated judgment in this Court based on the London Arbitration Award. (*Id.* at 1-2) In

a more recent supplemental memorandum, Cargo-Levant modified that request and asked that the

amount of security be increased to $800,000.  (D.I. 43 at 2)[3]

The parties completed their initial briefing on the Motion on February 26, 2013, (D.I. 27),

and, at the parties' joint request, (D.I. 28), the Court held oral argument on September 13, 2013,

(D.I. 37, ex. E (hereinafter "Tr.")).  At oral argument, both parties agreed that it was necessary

for them to supplement the record with additional evidence, generated during discovery, that bore

on the Motion's merits.  (*Id.* at 9-11, 83-84)  The Court thereafter allowed the parties to provide

this evidence along with supplemental briefing.  (*Id.* at 84)  The parties competed supplemental

briefing on October 25, 2013.  (D.I. 40)

### 3.   Facts Relating to the Debts and Alleged Debts Owed to PSL Limited and the Parties' Description of the Nature of Those Debts

The debts owed and alleged to be owed to PSL Limited, which are the subject of the

Motion, were allegedly incurred by both PSL-NA and PSL-USA.  (*See* D.I. 21 at 3)

#### a.   PSL-NA's Debts

In attempting to establish that PSL-NA owes attachable debts to PSL Limited, Cargo-

Levant points to a number of portions of the record.  First, it cites to PSL-NA's answers to

certain of Cargo-Levant's interrogatories, propounded in the instant litigation.  In those answers,

PSL-NA stated that PSL Limited "has provided equipment and parts to PSL-NA without cash

payment and without any security interest[, and that] PSL-NA carries the costs of this equipment

as a payable to PSL[ Limited]" but that the "accrued amounts are not subject to repayment on a

regular and definite basis" and there is "no date by which the obligation must be satisfied." (D.I.

---

[3]       In doing so, Cargo-Levant asserted that the total of the London Arbitration Award plus interest, as of April 30, 2014, was $716,846.12; it asserted that interest would continue to accrue at the rate of approximately $10,000 every three months. (D.I. 43 at 2)

21, ex. C at 5)

PSL-NA attached "an accounting of [its] debt [to PSL Limited] and an exemplar invoice"

to these interrogatory answers. (*Id.*) PSL-NA's "accounting of [its] debt"— provided in a

document titled "AP Aging Report"—indicates that from September 2009 through June 2012,

PSL Limited submitted more than 100 invoices (collectively, the "shipment invoices") to PSL-

NA seeking payment for equipment provided by PSL Limited. (*Id.*, ex. C at "AP Aging Report")

These shipment invoices total more than $4,500,000. (*Id.*) According to the "Due Date" that is

listed at the top of each page of the AP Aging Report, all of these invoices are now past due (and

became due at varying points between July 2010 and June 2012). (*Id.*) The "exemplar invoice,"

for its part, is a January 23, 2012 invoice—one that Garnishees admit is typical of the invoices

routinely provided in these transactions. (*Id.*, ex. C at "Commercial Invoice"; *id.*, ex. C at 5)  It

states that the "Payment Terms" regarding the shipped goods referenced in the invoice are "100%

Payment Against Presentation of Documents[.]"  (*Id.* at "Commercial Invoice")

Cargo-Levant also cites to a PSL-NA Financial Statement (dated August 27, 2012) and a

PSL-USA Financial Statement (dated September 10, 2012), in order to establish the debts at

issue.  Both of these financial statements list an amount exceeding $4,500,000 in the category

"Accounts payable - affiliate"; they note that this amount is owed as of March 31, 2012. (D.I. 37,

ex. A at 2 & ex. B at 2)  These financial statements both explain that these "[a]ccounts payable"

represent costs relating to PSL-NA's "purchases [of] certain parts and equipment for its pipe

manufacturing facility from PSL Limited" that remain "unpaid[.]"[4] (D.I. 37 at 4; *id.*, ex. A at 17

---

[4]        Contrary to all other documents referenced and the parties' arguments, PSL-
USA's Financial Statement appears to state that PSL-NA and PSL-USA "collectively" made
these "purchases[.]"  (*See* D.I. 37, ex. B at 6, 18)  However, nowhere is it disputed that the

& ex. B at 18; *see also* Deposition of Michael L. Lockey ("Lockey Dep."), D.I. 37, ex. C at 9, 90 (PSL-NA's Chief Financial Officer agreeing that the "Accounts payable - affiliate" notation is "the amount which is owed to PSL Limited"))

Garnishees, for their part, also describe the monies at issue as debts. (*See* Tr. at 49) According to Garnishees, however, these are contingent debts that are not subject to attachment. In support, Garnishees submit, *inter alia*, two sworn statements that seek to clarify the nature of PSL-NA's obligations to PSL Limited. The statements are intended to bolster Garnishees' assertion that subsequent to the submission of the shipment invoices, PSL Limited and PSL-NA orally modified the payment terms found on those invoices. (*See* D.I. 23 at 3-5; D.I. 27 at 2; D.I. 39 at 2)

The first of these sworn statements is an affidavit from Michael Lockey, PSL-NA's Chief Financial Officer. (Lockey Affidavit at ¶ 1) In this affidavit, Mr. Lockey asserts that PSL-NA and PSL Limited "have never followed the [shipment invoices'] payment terms as written" because the two entities "agreed no payments are due until PSL-NA is financially able." (*Id.* at ¶ 4) Mr. Lockey then states that in exchange for continued delivery of equipment from PSL Limited, PSL-NA has not provided and need not provide "any prepayment, security, note or specific date [ ] for repayment." (*Id.* at ¶ 5) As a result of this agreement, Mr. Lockey states that PSL-NA "does not presently owe any payment to PSL[ ]Limited, and for the same reason, has not made any payment since at least the beginning of 2009." (*Id.* at ¶ 7) According to Mr. Lockey, the agreement was first entered into (between him, PSL-NA's Chief Executive Officer Brian Vaill, and PSL Limited's Chairman Ashok Punj) "around [the] 2010 time frame" and has

---

alleged debts discussed above are those of PSL-NA.

thereafter been "regularly" re-confirmed. (Lockey Dep. at 8, 32-36) However, according to Mr. Lockey, this consistently renewed agreement is exclusively verbal—it has never been reduced to writing, nor even referenced in any correspondence or other documents. (*Id*. at 33, 37)

Garnishees also submitted the Sworn Declaration of K. Ramanathan, the Senior Vice President of PSL Limited. (Ramanathan Dec. at ¶ 2) Mr. Ramanathan "confirm[s] the accuracy" of Mr. Lockey's affidavit and states that "PSL Limited has agreed no payment on the outstanding balances is due until such time as PSL-[NA]'s fiscal situation improves." (*Id*. at ¶ 4) Though Mr. Ramanathan noted that he did not interact with Mr. Lockey after each shipment, he asserts that the consistently-renewed oral agreement between the two companies "covers all shipments and the entire balance for all parts and equipment shipped to PSL-[NA]." (*Id*. at ¶ 5)

### b.    PSL-USA's Debts and Alleged Debts

With respect to PSL-USA's debts and alleged debts to PSL Limited, Cargo-Levant identifies two sets of funds that are at issue.

First, Cargo-Levant seeks attachment of $29,238, based upon PSL-USA's answers to interrogatories, in which PSL-USA stated that it "owe[s]" a "debt" to PSL Limited resulting from an unwritten and unsecured June 2007 agreement between the entities. (*See* D.I. 21 at 3 & ex. D at 5) These monies represent payments made by PSL Limited to satisfy certain taxes and fees owed by PSL-USA. (D.I. 37 at 9 (citing Deposition of Raghav Punj, ("Punj Dep."), D.I. 37, ex. D at 27-28))

Second, Cargo-Levant seeks attachment of an additional approximately $30,000 in funds. These are funds provided to PSL-USA by PSL Limited, which are held in PSL-USA bank accounts; Cargo-Levant states that since "the funds held in those accounts are funds of PSL

[Limited], they comprise debts owed by PSL[-]USA to PSL [Limited] and are therefore subject to attachment." (*Id.* (citing Punj Dep. at 29-32)) Unlike the first set of PSL-USA-related funds referenced above (funds that PSL-USA itself labeled as a "debt"), PSL-USA describes this second set of funds as "equity capital" for which there was no agreement that PSL Limited would be repaid. (*See* Punj Dep. at 31-33)

## II.   APPLICABLE LEGAL STANDARDS

Maritime attachments arose because it is frequently, but not always, more difficult to find property of parties to a maritime dispute than of parties to a traditional civil action. *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 443 (2d Cir. 2006), *overruled on other grounds by Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte Ltd.*, 585 F.3d 58 (2d Cir. 2009). Since maritime parties are traditionally peripatetic, and their assets transitory, the traditional policy underlying maritime attachment has been to permit the attachment of assets wherever they can be found. *Id.*; *Polar Shipping Ltd., v. Oriental Shipping Corp.*, 680 F.2d 627, 637 (9th Cir. 1982). The rationale behind maritime attachment is twofold: (1) to provide a means to assure satisfaction if a suit is successful and (2) to insure a defendant's appearance in an action, an aspect of attachment inextricably linked to a plaintiff's substantive right to recover. *Winter Storm Shipping, Ltd. v. TPI*, 310 F.3d 263, 268 (2d Cir. 2002), *overruled on other grounds by Shipping Corp. of India Ltd.*, 585 F.3d 58; *Polar Shipping Ltd.*, 680 F.2d at 637.

Rule B contains the current provisions governing maritime attachment. *Winter Storm Shipping, Ltd.*, 310 F.3d at 268. The Rule governs the process by which a party may attach a defendant's tangible or intangible personal property—up to the amount sued for—in the hands of named garnishees. Fed. R. Civ. P. Supp. Rule B(1)(a); *Aqua Stoli Shipping Ltd.*, 460 F.3d at

438.  To that end, Rule B(1)(a) explains that if a defendant:

> [I]s not found within the district when a verified complaint praying
> for attachment and the affidavit required by Rule B(1)(b) are filed, a
> verified complaint may contain a prayer for process to attach the
> defendant's tangible or intangible personal property—up to the
> amount sued for—in the hands of garnishees named in the process.

Fed. R. Civ. P. Supp. Rule B(1)(a).  Thus, to begin the attachment process, the plaintiff must file

the type of verified complaint and affidavit described in Rule B(1)(a) and Rule B(1)(b).  Fed. R.

Civ. P. Supp. Rule B(1)(b); *Aqua Stoli Shipping Ltd.*, 460 F.3d at 438.  If a plaintiff successfully

does so, then a court (as the District Court did here), (D.I. 10, 12), must enter an order

authorizing the attachment, which the plaintiff may then serve on any person in possession of the

defendant's property (i.e., a garnishee) who is located within the district.  Fed. R. Civ. P. Supp.

Rule B(1)(b); *Aqua Stoli Shipping Ltd.*, 460 F.3d at 438.

Rule B(3)(a) sets forth the obligations of a garnishee, including its obligation to answer

interrogatories propounded by the plaintiff and to identify any "debts, credits or effects" of the

defendant that are in its hands.  Fed. R. Civ. P. Supp. Rule B(3)(a).  If, in response to such

interrogatories, a garnishee admits, *inter alia*, that it owes any debts to the defendant, Rule

B(3)(a) states that such debts:

> [S]hall be held in the garnishee's hands or paid into the registry of
> the court, and shall be held in either case subject to the further
> order of the court.

*Id.*  District courts have held that this portion of Rule B(3)(a) "unambiguously vests the court

with discretion to order a garnishee to pay a matured debt into the registry." *Florida Conference*

*Ass'n of Seventh-Day Adventists v. Kyriakides*, 151 F. Supp. 2d 1223, 1227-28 (C.D. Cal. 2001)

("Nothing in the language of Rule B indicates that the drafters intended that the [g]arnishee be

the one to decide whether the debts or credits should, or should not be paid into the registry.").[5]

Here, as noted above, when Cargo-Levant obtained interrogatory responses from PSL-NA and PSL-USA that it felt satisfied the requirements of Rule B(3)(a), Cargo-Levant filed the instant Motion requesting that the debts and alleged debts at issue be paid into the Court's registry. In response, Garnishees challenge whether Cargo-Levant has a right to attachment of the debts and alleged debts at issue. (D.I. 23 at 3-5, 11-14; D.I. 39 at 1-9)[6]

It is a plaintiff's burden to establish a right to attachment. *Aqua Stoli Shipping Ltd.*, 460 F.3d at 445; *Icon Amazing, L.L.C. v. Amazing Shipping, Ltd*, 951 F. Supp. 2d 909, 915 (S.D. Tex. 2013). To meet this burden, a plaintiff must show: "1) it has a valid prima facie admiralty claim against the defendant; 2) the defendant cannot be found within the district; . . . 3) the defendant's property may be found within the district; and 4) there is no statutory or maritime law bar to the attachment." *Aqua Stoli Shipping Ltd.*, 460 F.3d at 445 (internal citation omitted); *see also Icon Amazing, L.L.C.*, 951 F. Supp. 2d at 915. It is undisputed that Cargo-Levant can satisfy this burden as to three of these four requirements; the third requirement is the only one in dispute here. That is, the parties dispute whether Cargo-Levant has sufficiently demonstrated that the

---

[5]     Garnishees do not argue in the instant case that the Court is without authority to order them to deposit the challenged debts and alleged debts into its registry, only that the Court should not do so, for various reasons set out below.

[6]     Supplemental Rule E of the Federal Rules of Civil Procedure provides for a procedure wherein, when property is "arrested or attached" a person "claiming an interest in it" can seek a hearing at which the plaintiff must show why the arrest or attachment should not be vacated. Fed. R. Civ. P. Supp. R. E(4)(f). Garnishees note in their briefing that "because the property [at issue here] has not been physically restrained, a Rule E hearing is not a judicious use of the Court's and litigant's resources" and, thus, they have not sought a Rule E hearing. (D.I. 23 at 15 n.9) Neither party contests that the Court has the authority to rule on whether the debts and alleged debts at issue are attachable in resolving Cargo-Levant's motion brought pursuant to Rule B(3).

debts and alleged debts at issue amount to *PSL Limited's property*.

There appear to be few cases in which (1) a plaintiff has asserted that the defendant's property at issue is a debt owed by a garnishee; (2) the plaintiff argues that, pursuant to Rule B(3)(a), the court should require the garnishee to deposit the amount of the debt into the Court's registry; and (3) the plaintiff's request is actively contested by a garnishee. (*See, e.g.*, Tr. at 7-8) Indeed, the parties both point to only one federal case that has addressed how a court should assess whether a plaintiff has met its burden in that scenario: *Florida Conference Ass'n of Seventh-Day Adventists v. Kyriakides*, 151 F. Supp. 2d 1223, 1226-28 (C.D. Cal. 2001). (*See also* Tr. at 13) In *Florida Conference Ass'n of Seventh-Day Adventists*, the United States District Court for the Central District of California found that a plaintiff would not meet its burden to establish that the third requirement referenced above has been satisfied, were the state of the evidence such that "a factual dispute [existed] as to the due and payable nature" of the debt at issue. 151 F. Supp. 2d at 1226; *cf.* (D.I. 23 at 11 (Garnishees assessing record evidence and responding, contrary to argument put forward by Cargo-Levant, that this evidence was "[m]ore than sufficient [to] raise[] the question of whether the [shipment invoices] appear to be a true debt"); D.I. 21 at 8 (Cargo-Levant describing *Florida Conference Ass'n of Seventh-Day Adventists* as a "thorough and well reasoned analysis and interpretation of Rule B")).[7]

---

[7]     While the parties appear to agree that *Florida Conference Ass'n of Seventh-Day Adventists* provides the relevant standard here, the Court takes note that other courts have appeared to use different standards when faced with motions seeking the same or similar relief. For example, in *Sandafell Shipping Co. Ltd. v. Gulf Caribbean Transport Inc.*, No. IP 02-106-C(B/G), 2003 WL 23008975 (S.D. Ind. Sept. 11, 2003), the United States District Court for the Southern District of Indiana addressed a motion similar to that at issue here, and found that a garnishee should not be required to deposit funds into the registry of the court where the plaintiff did not "offer competent evidence that would tend to disprove" the garnishee's assertion that it did not owe a debt to the defendant. *Id.* at *3. Moreover, in addressing the appropriate standard

Once a plaintiff establishes its right to attachment, the decision of whether to order a

garnishee to make payment into the registry of the court is one within the Court's discretion. *See*

*Florida Conference Ass'n of Seventh-Day Adventists*, 151 F. Supp. 2d at 1226-29. In exercising

that discretion, a court should be guided by the purposes of Rule B:  to obtain jurisdiction over a

respondent and to provide for security that assures satisfaction if the suit is successful. *See id.* at

1228-29.

## III.   DISCUSSION

### A.    Cargo-Levant's Right to Attachment

It is undisputed that under the laws of attachment and garnishment, "the attaching creditor

can get no more than the debtor has." *Clipper Shipping Co., Ltd. v. Unimarine Bulk Transport,*

*Inc.*, 790 F. Supp. 56, 61 (D. Conn. 1992) (internal quotation marks and citation omitted).  Thus,

as Garnishees note, (D.I. 23 at 6), Cargo-Levant's right to attachment is derived from, and no

greater than, PSL Limited's right to recover from Garnishees. *See Connecticut Bank of*

*Commerce v. Republic of Congo*, 440 F. Supp. 2d 346, 353 (D. Del. 2006); *Florida Conference*

*Ass'n of Seventh-Day Adventists*, 151 F. Supp. 2d at 1226 n.5.  In other words,

> "[T]he test of the garnishee's liability is that he has funds, property
> or credits in his hands belonging to the debtor, for which the latter
> would have a right to sue.  The garnishee stands in every respect in
> the same position as if the suit had been brought by his own

---

of proof a plaintiff must meet to withstand a challenge at a Rule E hearing—a similar type of
proceeding to that here—the United States Court of Appeals for the Third Circuit has stated that
a plaintiff must only show that "reasonable grounds" exist for the attachment in order to prevail.
*Salazar v. Atlantic Sun*, 881 F.2d 73, 79-80 (3d Cir. 1989).  Here, the Court will apply the
standard set out in *Florida Conference Ass'n of Seventh-Day Adventists* as to whether Plaintiff
has demonstrated its right to attachment, but notes that Cargo-Levant would also have met its
burden under the standard set out in *Sandafell*, or that used in Rule E hearings as described in
*Salazar*.

> creditor. When a debt is due from a garnishee to a judgment debtor
> by virtue of an agreement existing between them, the garnishee is
> entitled to avail himself of all the defenses that could be made
> against the party to whom the debt is owing and with whom the
> contract . . . was made."

*Connecticut Bank of Commerce*, 440 F. Supp. 2d at 353 (quoting *Wilmington Trust Co. v.*

*Barron*, 470 A.2d 257, 263 (Del. 1983)); *see also In re Main, Inc.*, Nos. Civ.A. 99-2296, Civ.A.

99-2326, 1999 WL 674367, at *4 (E.D. Pa. Aug. 25, 1999).

### 1.    PSL-NA's Debts to PSL Limited

The parties' dispute largely focuses on the debts owed by PSL-NA to PSL

Limited—debts relating to equipment that PSL Limited shipped to PSL-NA's plant in

Mississippi. (Tr. at 7)

As an initial matter, the Court finds that, in light of the evidence of record, there can be

no credible factual dispute that: (1) PSL-NA does, in fact, owe "debts" to PSL Limited due to

the provision of the equipment referenced in the shipment invoices; and (2) those individual

debts (over 100 of them, totaling more that $4.5 million) each became due and owing at least at

some point prior to the filing of the instant litigation and of the District Court's Order of

attachment. A "debt" is classically defined as "a specific sum of money due by agreement or

otherwise[.]" BLACK'S LAW DICTIONARY 462 (9th ed. 2009). Here, the evidentiary record

consistently supports the conclusion that PSL-NA treated the monies listed on the shipment

invoices as just that—"specific sum[s] of money" that were "due by agreement[.]"

For example, PSL-NA's own AP Aging Report, printed in December 2012, clearly lists

the over 100 shipment invoices (provided from PSL Limited to PSL-NA between September

2009 and June 2012) and notes a "Due Date" for each of them (spanning, respectively, from July

14

2010 to June 2012). (D.I. 21, ex. C at "AP Aging Report")[8] Additionally, the one exemplary

invoice of record is dated January 23, 2012 and, with respect to its "Payment Terms[,]" reads

"100% Payment Against Presentation of Documents." (*Id.* at "Commercial Invoice")[9] PSL-NA

also lists these amounts in its Annual Report, completed in August 2012, as "accounts payable"

to PSL Limited, which are a part of its "[c]urrent liabilities." (D.I. 37, ex. A at 2, 17) And PSL-

NA's Chief Financial Officer, Mr. Lockey, has agreed that these amounts are monies that are

"owed to PSL Limited[.]" (Lockey Dep. at 90) Indeed, even in their presentation to the Court,

Garnishees have not seriously disputed that PSL-NA is indebted to PSL Limited, (Tr. at 49), nor

that the shipment invoices amount to original written contracts that (unless subsequently

modified) required payment of those debts at a fixed point in time. (D.I. 27 at 2)

Garnishees do now, however, raise what amounts to two defenses[10] to Cargo-Levant's

---

[8]     For example, the first of the listed invoices is dated September 1, 2009 and carries
a due date of July 20, 2010; the last of the listed invoices is dated June 1, 2012 and carries a
due date of the same day, June 1, 2012. (D.I. 21, ex. C at "AP Aging Report") All of the due dates
listed for the respective invoices fall within one year of the invoice date listed for that invoice; in
some cases, as referenced above, the invoice date and due date are listed as being the same date.
(*Id.*)

[9]     The exemplary invoice also includes a "Declaration" at the bottom of it, stating,
on behalf of PSL Limited, "We confirm that all particulars given above are true [and] correct."
(D.I. 21, ex. C at "Commercial Invoice") There does not appear to be dispute that all of the
invoices listed in the AP Aging Report contained similar "Payment Terms" as the exemplary
invoice that is in the record.

[10]     The nature of Garnishees' opposition to the Motion has, notably, been shifting and
inconsistent—a fact that tends to undercut the credibility of the remaining arguments that they
still press before the Court. Time and again throughout the litigation of this Motion, Garnishees
put forward one line of argument as to why granting the Motion was improper, only to later pull
back that argument. For example, Garnishees initially argued that the amounts due to PSL
Limited from the shipment invoices "could likely be considered an equity infusion[,]" and are
therefore not a "'debt'" at all. (D.I. 23 at 3, 7-11) Later, in their supplemental opposition brief,
Garnishees reversed course, stating that they do "not contend that the shipments have been

Motion regarding PSL-NA's debts, which the Court will address in turn.

       **a.**       **The Oral Agreement(s) Between PSL Limited and PSL-NA**

Garnishees' principal remaining defense is that, although the shipment invoices amount

to written agreements between PSL Limited and PSL-NA, and although those written agreements

would (if not subsequently modified) demonstrate that the listed amounts were debts due and

owing at the time of the District Court's attachment Order, the terms of all of these written

agreements were modified by a subsequent oral agreement (repeatedly reaffirmed) between PSL

Limited and PSL-NA. In those subsequent oral agreements, according to Garnishees, PSL

Limited promised not to require payment of the debts unless and until PSL-NA became

financially able to make payment.

That this is Garnishees' primary line of argument is repeatedly made clear in their

briefing, wherein they state that the terms of the "original written contract" (i.e., the shipment

invoices) between PSL Limited and PSL-NA were "subsequently modified or waived" by a

"subsequent oral agreement" between those parties, (D.I. 27 at 2 (internal quotation marks

_____

converted into equity or capital infusions." (D.I. 39 at 3 n.7; *see also* Tr. at 68-69 (Garnishees'
counsel asserting that PSL Limited and PSL-NA have not adopted the debts as an equity
infusion); Lockey Dep. at 120-21 (Mr. Lockey confirming same)) Garnishees' initial opposition
brief also opposed the Motion on the grounds that Cargo-Levant is seeking to "transfer its status
from an unsecured creditor to secured creditor" and is "improperly attempt[ing] to obtain priority
over PSL-NA's other secured creditors[.]" (D.I. 23 at 6-7) But at oral argument, Garnishees
agreed that the issue of the relative priority of Cargo-Levant and PSL-NA's secured creditors was
not relevant to this Motion. (Tr. at 66); *see also W. Bulk Carriers (Australia), Pty. Ltd. v. P.S.
Int'l, Ltd.*, 762 F. Supp. 1302, 1307 (S.D. Ohio 1991). Additionally, Garnishees argued in their
initial opposition brief that the Motion should fail because Cargo-Levant "only holds a foreign
arbitration award against [PSL Limited,]" and not a judgment in this Court. (D.I. 23 at 6)
However, once again, Garnishees abandoned this position at oral argument. (*See* Tr. at 72)

omitted)), which occurred "after the shipment of supplies[,]" (D.I. 39 at 3).[11] The argument was also emphasized by Garnishees' counsel at oral argument. (Tr. at 57 (Garnishees' counsel noting that the parol evidence rule would not apply in this case because the oral agreements at issue "happened after[]" the written "agreements" (i.e., the shipment invoices) were delivered)) Thus, Garnishees assert that Cargo-Levant cannot attach PSL-NA's debts at issue, because (pursuant to the above-referenced, repeated, oral modifications) the debts are contingent debts, not presently due and owing, and are thus not attachable pursuant to Rule B. (D.I. 39 at 1; Tr. at 55-56) The Court disagrees.[12]

---

[11]    (See also D.I. 27 at 2 (noting that the parol evidence rule did not preclude the Court from considering Mr. Lockey's affidavit regarding this oral modification, since this was not a case where "any oral agreements to forego collections *occurred prior to* PSL[ Limited] shipping the equipment") (emphasis added); D.I. 39 at 6 ("PSL[ ]Limited's willingness to continually provide needed parts and equipment to its subsidiary confirms the [oral modification] agreement existed and the invoices—*by subsequent agreement*—were not followed.") (emphasis added))

[12]    As another example of Garnishees' shifting arguments, there are instances in their briefing where Garnishees put forward a line of argument that directly contradicts their assertions that these oral agreements *subsequently* modified the written agreements (the shipment invoices). That is, at certain points, Garnishees appear to argue that the terms of the written agreements were not effective because of some *prior* oral agreement. (See, e.g., D.I. 39 at 3 (Garnishees asserting that "the [shipment] invoices were never intended to form the basis of payment terms between [PSL Limited] and [PSL-NA]"); *id.* at 6 (Garnishees arguing that "[t]he fact that PSL[] Limited delivered the goods despite non-payment necessarily means there was some other agreement in place")) The Court finds that, to the extent Garnishees are truly attempting to proffer this type of contradictory argument, the argument is not sufficient to create a factual dispute as to the due and payable nature of the debts at issue. The Court arrives at this conclusion primarily because this alternative argument is directly contradicted by Garnishees' primary argument regarding the timing of the relevant oral agreements. (See, e.g., D.I. 27 at 1-3 (Garnishees' sur-reply brief explaining that the parol evidence rule does not apply here because the "parol evidence rule does not preclude evidence of a *subsequent* oral agreement that modifies an earlier contract") (internal quotations marks and citation omitted) (emphasis added)) Indeed, the portion of the Lockey Deposition that Garnishees cite in support of this alternative argument, (see D.I. 39 at 3), is immediately preceded and succeeded by clarifications that any oral agreements occurred *after* the written agreements at issue went into force. (See Lockey Dep. at

Even crediting all of Garnishees' assertions regarding the subsequent oral agreements between PSL Limited and PSL-NA, these oral agreements are not enforceable. This is because PSL-NA provided PSL Limited with no consideration in return for PSL Limited's oral promise not to immediately collect payment pursuant to the terms of the shipment invoices.

The Court's conclusion is drawn from general common law contract principles, which govern federal maritime disputes. *See Clevo Co. v. Hecny Transp., Inc.*, 715 F.3d 1189, 1194 (9th Cir. 2013) ("Basic principles in the common law of contracts readily apply in the maritime context."); *In re Gingrich*, Civil Action No. 09-1898 (CCC), 2011 WL 6001347, at *3 (D.N.J. Nov. 30, 2011) ("Federal maritime contract law consists of general common law contract principles overlaid with doctrines peculiar to admiralty."). Under such principles, modification of a written agreement must be supported by consideration, in order for that modification to be enforceable.[13] *See Operating Eng'rs Local 139 Health Benefit Fund v. Gustafson Constr. Corp.,*

---

113-15) And even were this alternative argument not one contradicted by other positions put forward by Garnishees, and even were the evidence to support it not weak, the Court has real doubts that any possible evidence in support of the argument could be considered here because, as Garnishees implicitly acknowledge, the parol evidence rule renders inoperative oral agreements that attempt to vary the terms of fully integrated and unambiguous later-in-time written contracts. (*See* D.I. 27 at 2; *see also* D.I. 25 at 3-4)

[13]     Garnishees argue that Mississippi law (and not general common law contract principles) applies when addressing the modification of contracts between PSL Limited and PSL-NA. (Tr. at 58) Where, as here, a plaintiff invoked a court's admiralty jurisdiction based upon the alleged breach of a maritime agreement that did not involve the garnishee, the Court is unaware of any case addressing whether the garnishee's contract with the defendant should be analyzed under general federal common law or state law (and Garnishees cite to no such case). However, the Court notes that, as a general matter, when a claim is brought under the Court's admiralty jurisdiction, federal common law (and not state law) is preferred. *See Blue Whale Corp. v. Grand China Shipping Dev. Co., Ltd.*, 722 F.3d 488, 497 (2d Cir. 2013) ("When the choice is between state law and federal common law, the federal interest in maintaining uniformity in the quintessentially federal realm of admiralty supersedes any competing interest in applying state law."); *Clipper Shipping Co.*, 790 F. Supp. at 61 n.6 ("The law of Rule B

258 F.3d 645, 649 (7th Cir. 2001); *Fort Sumter Tours, Inc. v. Babbitt*, 66 F.3d 1324, 1331 (4th Cir. 1995); *see also* RESTATEMENT (SECOND) OF CONTRACTS § 71 (1981).

In *Johnson v. Seacor Marine Corp.*, 404 F.3d 871, 874-77 (5th Cir. 2005), for example, the United States Court of Appeals for the Fifth Circuit addressed the question of whether a maritime contract was supported by consideration and therefore enforceable. In doing so, that Court cited Section 73 of the RESTATEMENT (SECOND) OF CONTRACTS, which sets forth what is known as the "preexisting duty rule": "Performance of a legal duty owed to a promisor which is neither doubtful nor the subject of honest dispute is not consideration; but a similar performance is consideration if it differs from what was required by the duty in a way which reflects more than a pretense of bargain." RESTATEMENT (SECOND) OF CONTRACTS § 73 (1981); *Johnson*, 404 F.3d at 875. That Court then examined other influential treatises and found that this "preexisting duty rule" in the RESTATEMENT should not be applied if "even minimal consideration supports the contract" at issue. *Johnson*, 404 F.3d at 875. "Thus, even if a contract does not require any performance that would not have been done in the absence of the contract, as long as the contracting parties gain some legally enforceable right as a result of the contract which they previously did not have, consideration is present." *Id.* The *Johnson* Court ultimately found that

---

attachments remains a matter of federal common law[.]"). In any event, even if the Court were to apply Mississippi law, the outcome would be unchanged. Like the general federal common law, Mississippi law allows for the modification of a written contract by subsequent agreement only if "such an agreement [is] supported by new or additional consideration." *See Iuka Guar. Bank v. Beard*, 658 So.2d 1367, 1372-73 (Miss. 1995) (noting that "[a] written contract may be modified by a subsequent agreement, but the law of this state is that such an agreement must be supported by new or additional consideration" and finding that the defendant could enforce the plaintiff's agreement to modify a written contract, because the defendant suffered a legal detriment in exchange for her agreement to modify the contract); *see also Thompson v. First Am. Nat'l Bank*, 19 So.3d 784, 787 (Miss. Ct. App. 2009).

the contract before it was legally enforceable because it was supported by consideration (in that case, because it created "distinct, legally enforceable right[s]" that inured to the benefit of both contracting parties). *Id.* at 877.

Applying this standard to the record evidence in the instant case, the Court concludes that no consideration exists to support the oral agreements between PSL Limited and PSL-NA to modify the payment terms found in the various shipment invoices. Mr. Lockey, PSL-NA's Chief Financial Officer, describes these oral agreements as follows:

> The two companies agreed that when the financial condition of PSL-NA allows at some undefined point in the future, payment towards the accounts payable will occur. PSL[ Limited] has agreed that accounts payable in its favor will not accrue interest, are not subject to any definite or regular payment schedule, and payment for the equipment is not due upon delivery as otherwise described on the invoices.

(Lockey Affidavit at ¶ 6) Mr. Lockey further adds that when PSL-NA obtains equipment from PSL Limited, it does so "without any prepayment, security, note or specific date [ ] for repayment." (*Id.* at ¶ 5; *see also id.* at ¶ 11 ("PSL-NA has never agreed to extend any security interest to PSL[ Limited], and PSL[ Limited] has never asked for any.")) Likewise, Mr. Ramanathan of PSL Limited, confirms that "PSL Limited has agreed no payment on the outstanding balances is due until such time as PSL-[NA]'s fiscal situation improves." (Ramanathan Dec. at ¶ 4)

As Cargo-Levant argues, (D.I. 40 at 3-5), these oral agreements are similar to one that the United States Bankruptcy Court for the Eastern District of Pennsylvania found unenforceable in *In re Main, Inc.*, Nos. 96-19098DAS, 98-0073DAS, 1999 WL 97934, at *2 (Bankr. E.D. Pa. Feb. 19, 1999), *aff'd*, 1999 WL 674367 (E.D. Pa. 1999). In that case, the plaintiff—the trustee of

20

Main, Inc.—sought to obtain an attachment in the amount of $53,000; this represented the

amount of the entire judgment that the plaintiff had previously obtained in the proceeding against

defendant Morris Lift ("Lift"). *In re Main, Inc.*, 1999 WL 97934, at *1. A separate Judgment

Note and an accompanying Security Agreement that was part of the record in the case

demonstrated that another defendant, Airbev, Inc. ("Airbev") owed Lift "sums considerably in

excess of $53,000[.]" *Id.* And so, in *In re Main, Inc.*, the plaintiff was attempting to garnish the

"entire $53,000 of his judgment against Lift [that was then] in the hands of Airbev[.]" *Id.* at *2.

Airbev, for its part, fought the plaintiff's efforts. It argued that it could defend an action

for recovery of this debt, *inter alia*, on the basis of an oral agreement it had purportedly entered

into with Lift, subsequent to the execution of the Judgment Note and Security Agreement. *Id.*

Under that purported oral agreement, Lift stated that it would "accept payments only in the event

that Airbev has excess cash overflow[.]" *Id.* at *1 (internal quotation marks omitted).

In finding this alleged oral agreement unenforceable, the *In re Main* Court found that its

terms were "too uncertain and vague . . . to modify an unambiguous written contract[.]" *Id.* at

*2. But the *In re Main* Court also noted (citing Pennsylvania law, applicable in that non-

admiralty case) that "consideration is prerequisite to render any forbearance agreement

enforceable." *Id.* And it concluded that Airbev had provided "no evidence of any consideration

provided by Airbev to Lift in consideration for a forbearance agreement," and that it could

"conceive of [no] action on the part of Airbev to benefit Lift which could have constituted the

requisite consideration." *Id.* For at least these reasons, the *In re Main* Court found that the

asserted new agreement between Airbev and Lift was not "enforceable as to a third party such as

[the plaintiff]" and, therefore, it could not limit the plaintiff's "right to garnish the entire $53,000

of his judgment against Lift" in Airbev's possession. *Id.*; *see also In re 400 Walnut Assocs., L.P.*, 454 B.R. 60, 70-72 (Bankr. E.D. Pa. 2011) (forbearance agreement modifying original contract requires consideration to be legally enforceable); *In re Carco P'ship*, 113 B.R. 735, 737 (Bankr. M.D. Fla. 1990), *superceded by statute on other grounds, as recognized in In re Jacksonville Riverfront Dev., Ltd.*, 215 B.R. 239, 243 (Bankr. M.D. Fla. 1997) (same).

Here, just as Airbev did in *In re Main*, PSL-NA asserts that oral agreements were entered into (subsequent to the written agreements captured by the terms of the shipment invoices) that conferred upon PSL-NA a significant benefit—the ability to refrain from paying these debts unless and until PSL-NA's "financial condition . . . allows" (whatever that imprecise language might mean). (Lockey Affidavit at ¶ 6; *see also* Ramanathan Dec. at ¶ 4; Tr. at 55) In exchange, PSL-NA, like Airbev, promised nothing new to the entity to which it is indebted. There is no record evidence that demonstrates (or even hints) that PSL Limited gained any new legally enforceable right or benefit in exchange for its promise not to require timely payment. *Cf. Johnson*, 404 F.3d at 876-77 (finding consideration supported subsequent agreement where promisee gained a legally enforceable right to board promisor's vessels). Indeed, every element of the subsequent oral agreements between PSL Limited and PSL-NA—the timing of payment, PSL-NA's lack of security provided and the fact that no interest accrues on the debts—favors PSL-NA.

Accordingly, the record is clear that PSL Limited and PSL-NA failed to create legally enforceable agreements to modify the terms of the shipment invoices. If PSL Limited sought payment from PSL-NA for the debts incurred, PSL-NA could assert no defense against payment

based on these oral agreements.[14]

### b.    Statute of Limitations

Garnishees continue to press one other defense to the Motion as it relates to PSL-NA's

debts: that any claims on the shipment invoices that are more than three years old are barred by

the applicable statute of limitations. (D.I. 23 at 5 n.3)  Garnishees base their argument on the fact

that PSL-NA is a Delaware corporation and that Delaware law provides for a three-year statute of

limitations as to certain contract actions. *See* 10 Del. C. § 8106 (noting that no such claims

"shall be brought after the expiration of 3 years from the accruing of the cause of such action").

Cargo-Levant does not seriously dispute that a three-year statute of limitations applies to

claims PSL Limited could make against PSL-NA.[15]  Instead, it asserts that the amount of PSL-

NA's debts at issue captured within this three-year window (indeed, even simply the amount of

---

[14]    Garnishees also argue that PSL-NA's debts to PSL Limited may not be attached
because these debts are "contingent" on an improvement in PSL-NA's financial condition. (*See*
D.I. 39 at 8) Cargo-Levant disputes this. (Tr. at 32-33)  Garnishees' argument, however,
necessarily relies upon the formation of legally enforceable oral agreements between PSL
Limited and PSL-NA, modifying the payment terms of the shipment invoices. The Court has
found that no such agreements were created, however. Therefore, it need not and does not
address the parties' dispute regarding whether a contingent debt may be subject to attachment, or
whether PSL-NA's debts are truly "contingent."

[15]    At oral argument, Cargo-Levant argued that maritime law, and not Delaware law,
provides the applicable statute of limitations for disputes regarding Garnishees' debts and alleged
debts to PSL Limited. (Tr. at 37-38)  However, as Cargo-Levant notes, (*id.*), even applying
maritime law here would involve reference to the relevant state statute of limitations as a
"benchmark" in determining whether a defense of laches is available. *See Venus Lines Agency,
Inc. v. CVG Int'l Am., Inc.*, 234 F.3d 1225, 1230 (11th Cir. 2000); *see also Navigators Mgmt.
Co., Inc. v. St. Paul Fire and Marine Ins. Co.*, No. 4:06CV01722 SNLJ, 2011 WL 6258488, at
*3 (E.D. Mo. Dec. 15, 2011); *In re Consolidation Coal Co.*, 228 F. Supp. 2d 764, 768-69
(N.D.W.V. 2001). In the numerous briefs submitted by Cargo-Levant after Garnishees raised the
statute of limitations issue, and at oral argument, Cargo-Levant never asserted that the three-year
limitations period would not apply (nor that another state's law provided the relevant
"benchmark"). (*See, e.g.*, D.I. 25 at 5; Tr. at 38)

debts that have accrued from March 1, 2012 forward) is "far more than sufficient to satisfy the $750,000 [now $800,000] required to secure [Cargo-Levant's] claim[.]" (D.I. 25 at 5; *see also* Tr. at 38; D.I. 21, ex. C at "AP Aging Report" (listing shipment invoices totaling over $2.6 million from March 1, 2012 forward)) Garnishees do not dispute the merit of this argument, which renders any statute of limitations-based defense unavailing.

### c.   Conclusion

For the aforementioned reasons, PSL-NA has failed to offer evidence creating a factual dispute as to whether it could assert a cognizable defense, were PSL Limited to initiate an action against it for the debts at issue (at least those falling within the three-year limitations period). Thus, the Court finds that PSL-NA has debts that are "due and payable" to PSL Limited in an amount far exceeding $800,000. *Florida Conference Ass'n of Seventh-Day Adventists*, 151 F. Supp. 2d at 1226 & n.5. Accordingly, these debts are of the type that may be ordered to be paid into the Court's registry, pursuant to Rule B(3)(a).

### 2.   PSL-USA's Debts and Alleged Debts to PSL Limited

Cargo-Levant also asserts that additional monies owed to PSL Limited are in the hands of PSL-USA. First, Cargo-Levant seeks attachment of $29,238 based upon PSL-USA's answers to interrogatories, in which PSL-USA stated that it "owe[s]" PSL Limited that amount as a "debt[,]" in light of an unwritten and unsecured June 2007 agreement between the entities that "is not subject to any maturity date or repayment on any regular or definite basis." (*See* D.I. 21 at 3 & ex. D at 5) Second, Cargo-Levant seeks attachment of an additional $30,000 that PSL Limited provided to PSL-USA, which is held in PSL-USA's bank accounts. (D.I. 37 at 9 (citing Punj Dep. at 29-32))

24

Garnishees argue that the first of these two sums cannot be attached because "PSL-USA could defend a collections action to recover the accounts payable on the basis that the matter is time barred." (D.I. 23 at 5) Here, the only record evidence of the $29,238 debt is reflected by PSL-USA's interrogatory answer, which states that the debt "arose in June 2007[.]" (D.I. 21, ex. D at 5) This would appear to mean that as of June 2010, the relevant statute of limitations would eliminate PSL Limited's ability to pursue a claim on this debt (or, were maritime law to apply, that the doctrine of laches would bar such a claim as of this date). For its part, Cargo-Levant made no response to this argument—either in its initial reply brief, at oral argument, or in supplemental briefing. (*See, e.g.*, Tr. at 38-39; D.I. 37 at 9) Thus, the Court finds that Garnishees have put forward sufficient evidence to create a factual dispute as to the due and payable nature of this debt.

As to the second sum—the $30,000 provided to PSL-USA by PSL Limited and held in PSL-USA's bank accounts—the Court also finds that Cargo-Levant has not met its burden to establish a right to attachment. Unlike the $29,238 amount (funds that Garnishees themselves labeled as "debt" and for which there is corroborating evidence of record establishing same) PSL-USA describes this $30,000 amount as not a debt, but "equity capital" for which there was no agreement that PSL Limited would be repaid. (*See* Punj Dep. at 31-33) Cargo-Levant provides no evidence to the contrary. Accordingly, there is no real indication in the record that these funds are claimed by or being held for PSL Limited. *See* Fed. R. Civ. P. Supp. Rule B(3)(a) (stating that only a garnishee's "debts, credits, or effects" on behalf of a defendant are the types of funds that a court may order to be paid into the registry of the court).

Thus, Cargo-Levant has not met its burden to establish a right of attachment to either of

these sets of funds.

### B.  Whether the Court Should Exercise its Discretion and Order Payment be Made Into the Registry of the Court

As noted above, once a plaintiff establishes its right to attachment, the decision of

whether to order a garnishee to make payment into the registry of a court is one within the

Court's discretion. *See Florida Conference Ass'n of Seventh-Day Adventists*, 151 F. Supp. 2d at

1226-29.  In exercising that discretion, a court should be guided by the purposes of Rule B:  to

obtain jurisdiction over a respondent and to provide for security that assures satisfaction if the

suit is successful. *See id.* at 1228-29.

Cargo-Levant's argument that payment should be made into the Court's registry focuses

primarily on the second of Rule B's two objectives.  In particular, it argues that assurance of

satisfaction is necessary at this stage in light of PSL-NA's purported financial limitations.  (D.I.

25 at 12)  Indeed, Garnishees themselves emphasize the financial hardship that PSL-NA

purportedly faces.[16]  (D.I. 23 at 14; Lockey Affidavit at ¶¶ 8-9)  To the extent that PSL-NA is

---

[16]     Garnishees' emphasis on PSL-NA's financial hardship comes as part of a slightly different argument not addressed elsewhere in this Memorandum Order.  Garnishees argue that "[e]ven if this Court conclude[s] from the record that the [monies referenced in the shipment invoices] are attachable and should be paid into the Court's registry," it should nevertheless "exercis[e] [its] equitable authority" to vacate the attachment because PSL-NA is purportedly incapable of providing "sufficient funds [to] satisfy" Cargo-Levant's requested relief.  (D.I. 23 at 14-15)  According to Garnishees, a similar "futility" argument was accepted as the basis of another court's decision to exercise its equitable power and vacate an attachment.  (*Id.*)  But the circumstances of that case, *Evridiki Navigation, Inc. v. Sanko Steamship Co., Ltd.*, 880 F. Supp. 2d 666 (D. Md. 2012), bear little resemblance to the situation here.

In *Evridiki Navigation*, a group of plaintiffs obtained a court order attaching and arresting the defendant's vessel.  880 F. Supp. 2d at 668.  The defendant, however, filed for bankruptcy in another country. *Id.* at 673.  Because of the nature of and the limitations imposed due to that bankruptcy filing and related litigation in the United States, the United States District Court for the District of Maryland explained that continued attachment of the defendant's vessel could not

facing financial hardship, this provides reason for the Court to require PSL-NA to deposit funds into the Court's registry. As the *Florida Conference Ass'n of Seventh-Day Adventists* Court stated, in addressing a maritime claim in which a garnishee faced "financial difficulties" but the plaintiff nevertheless sought an order like the one requested here: "[b]y authorizing the court to order debts or credits paid into the registry, Rule B empowers the court to ensure that the security attached is protected . . . from the insolvency of the garnishee." 151 F. Supp. 2d at 1225, 1228-29. Accordingly, the Court agrees with Cargo-Levant that "PSL-NA's description of its financial difficulties . . . only serves to underscore the need for the plaintiff to obtain the relief requested in its pending motion."[17] (D.I. 25 at 12)

## IV.   Conclusion

---

possibly achieve either of Rule B's objectives, and thus further attachment "would be both futile and inequitable." *Id.* at 673-74. Here, by contrast, there is no other proceeding that would prevent Cargo-Levant's claims from being adjudicated in this Court, nor is PSL-NA incapable of providing funds to satisfy a judgment because of restrictions placed upon it by another court. *See id.* Moreover, Garnishees do not allege that PSL-NA is incapable of providing *any* funds; instead they assert only that PSL-NA is incapable of providing *"sufficient* funds [to] satisfy" Cargo-Levant's requested relief. (D.I. 23 at 14 (emphasis added)) And the Court is not convinced, based on the limited current financial evidence of record regarding PSL-NA, that it is incapable of meeting this obligation. Thus, (and in contrast to the situation in *Evridiki Navigation*) it is not clear that the Court's Order would be incapable of leading to the satisfaction of Rule B's objectives here. Accordingly, the Court declines to equitably vacate the attachment of the funds at issue.

[17]      Garnishees appear to argue that because the transactions between PSL Limited and PSL-NA were "atypical transactions and not . . . arm's length commercial transaction[s,]" this fact should persuade the Court not to order PSL-NA to deposit funds into the registry of the Court. (D.I. 39 at 3 n.7) The closeness of these two companies, however, supports just the opposite conclusion. As Cargo-Levant notes, (Tr. at 42-45), the instant action originates from PSL Limited's alleged failure to pay the London Arbitration Award. If, as Garnishees assert, PSL Limited is invested in PSL-NA's financial well being, PSL Limited might well provide PSL-NA with the funds necessary to meet its obligations to the Court resulting from this Order—an Order that, after all, stems from "litigation over a debt that's [allegedly] owed by PSL Limited" to Cargo-Levant. (*Id.* at 42)

For the reasons stated above, it is hereby ORDERED that: (1) Cargo-Levant's Motion is

GRANTED-IN-PART AND DENIED-IN-PART; and (2) Garnishee PSL-NA shall pay

$800,000[18] into the Court's registry within 45 days of the date of this Order.


Dated: May 30, 2014

_____
Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE

---

[18]    At no point did Garnishees dispute that $800,000 is a reasonable amount to satisfy Cargo-Levant's anticipated judgment in this Court. Based on the record evidence regarding the nature of the Award, the Court finds that it is a reasonable amount to serve that purpose.

28